Good morning, may it please the Court, Justin Lonergan for Mr. Hutton. If I may reserve two minutes for rebuttal. Very well. Dubin v. United States was a necessary reset to how courts interpret criminal statutes that involve potentially limitless terms, such as the word use. The impact of Dubin is that this Court's pre-Dubin methodology for looking at the word use in the context of Section 2251 cannot stand, and instead this Court has the opportunity, as noted in Mendez, to essentially write on a clean slate. And properly applying the methodology that Dubin sets out means that the word use has to have a causal element between a defendant's actions and a child's sexually explicit conduct. And to be sure, this still results in a broad statute, but not so broad as to encompass what happened with Mr. Hutton, however objectionable it might be morally or socially. United States says that Dubin is a wholly different context, and that really misses the point of what Dubin is about and how this Court looks at and adjusts to higher intervening authority. Since the parties briefed this, Your Honor. As my recollection of this is Boehm and other cases sort of resolved this issue negatively. I mean, we've interpreted uses in the past broadly. As I understand your argument, maybe this is what you're getting to. You're arguing that Dubin has changed that analysis. Is that correct? That is correct, Your Honor. That the last time this Court looked at this situation in Boehm, that progeny is no longer reconcilable with how the Supreme Court looks at statutory interpretation. The problem you run into is Miller-Vigamy in our Court, which is it just sets such a high standard. I mean, and I'm wondering if you can address it. Because when I read Dubin, I mean, I wasn't, to be honest with you, I wasn't even sure that it changed the analysis that much. It's a different issue. But whether it does that, it has to be clearly reconcilable with Boehm. And so maybe you can explain why you think that's the case. Yes, Your Honor. And if I may, I'd like to take the Court back to the concurrence in Duarte where this issue was, the Miller-Vigamy issue was discussed. And there, Judge Dyke wrote, quote, our court applies a more flexible approach than other circuits when determining whether circuit precedent has been abrogated by intervening authority, citing to Miller versus Gamy. And the concurrence went on to really explain that, quote, in contrast to the more restrictive standards our sister circuits require to abrogate a prior decision of ours, the intervening authority need only be, quote, closely related, close quote, to the prior circuit precedent and need not expressly overrule its holding. And that came after the parties briefed Mr. Hutton's case. And it's informative to how we look at Dubin because Dubin is not about identity theft. Dubin is a case of how do we synthesize and to what level do we look at various factors in statutory interpretation. Dubin set out, essentially, I'd suggest about five different layers of analysis that a court goes through that weren't, that wasn't looked at in Larson. Larson basically looked at two things, plain meaning and a brief note of statutory canons with Nostra Asocius. And the way that Larson looked at that is clearly irreconcilable with Dubin, because Larson said that, essentially, there was a plain meaning to the word use. Well, but what Larson didn't look at and what Dubin tells us to look at is, in fact, to the authority that Larson cited to Miriam Webster even as a starting point. The word use has seven potential definitions, not just one that Larson picked. And Larson said, and didn't talk about those other definitions, but Larson said basically that the circuit was going to broadly interpret the use element. But this court, since Dubin, pointing out U.S. versus Patterson has says, and Patterson kind of doubles down on Dubin, that a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words. But those are general statements, and it seems to me that clearly irreconcilable requires. I mean, I don't think that Boehm disagreed with that proposition. And the fact that it can have several meanings doesn't change the fact that in Boehm we chose one meaning. And Dubin does not require us to choose another meaning. Yes, we could, but I'm not sure we even have the authority to do that on Bonk. Or excuse me, as a panel, I think it'd have to go on Bonk.  And I think where the problem continues, where we get into this area where it does turn back to this panel being able to have authority, is if you keep looking at the things that Dubin told us to look at, kind of the next thing is the text and those canons of construction, such as Nosotro associates, where Larson only looked at one verb, employs. Congress gave us five. Congress gave us a set of verbs out of which we are supposed to, post-Dubin, synthesize what each of those words means. Counsel, the problem that I think I have with saying that Dubin overrules or requires us to recognize as overruled cases like Larson, is that what the Supreme Court ultimately did was to talk about active versus passive, basically. That use means doing something affirmative, basically. And in Larson, that's exactly what was required. That Larson had used the minor to produce the pornographic images. We said the evidence established that Larson directed the minor's actions at a minimum engaging in active conduct. So why isn't that consistent with what Dubin says? Because Dubin takes the court beyond just looking at one plain meaning of the word. It also takes the court into the overall statutory construct. And what 2251 is about, as this court has said as far back as free speech coalition, is the active participation of the child. And Dubin requires, and this is where all of Dubin's factors interplay. There's certainly arguments. Your argument really isn't even about use, it seems to me. Your argument is about what it means to cause the minor to engage in the sexually explicit conduct. Which is really a different piece of the statute. So I guess, and Larson didn't deal with that because there was a different kind of, the child was, you know, with the defendant when the photographs were taken. So I'm not really sure why this is a Dubin problem. The issue that we are phrasing to the court is that the court needs to look at the entirety of the statutory text. As noted in the reply brief, we've broken down that we can't just focus on images. Or we can't just focus on broad concepts. We have to remain true as well to the actual text of the statute. And that's, as Your Honor is suggesting, I think we're getting, and we recognize this. Some of this is influenced by the very, very broad definition of lasciviousness. Which is not before the court, but it certainly does factor into how do we interpret use. Because that's been essentially the shift since Larson is that the circuit has essentially adopted this subject of the depiction rule. Which largely wipes away the statutory text. Well, that has definitely been criticized. But it seems to me there are three separate things that you've been talking about. And I'm trying to sort of separate them out in my mind. One is the meaning of the word use or use. The second is what does it mean for a minor to engage in sexually explicit conduct. And the third is this sort of lasciviousness prong or requirement. Those seem like separate things to me. Not one thing. So specifically what is it you think is different here than in Larson, if anything? The difference in here, Your Honor, is that Larson had a very different set of circumstances. Larson had that really active conduct that I think nobody would say is outside of the statute. But what is concerning is. Wait, what was the active conduct? Your Honor, the active conduct there, Your Honor, was essentially had the defendant engaged in this relationship with the minor. And he was with her physically like in that presence of the minor making these photographs. The minor was there. I don't understand how that changes. This is on the use point? This is on the use point. Correct, Your Honor. I really don't understand how that distinction would make a difference on use. Because that example of use is so much broader than where the circuit has gone since Larson. We've moved away from a defendant being essentially actively physically with the child causing those images to be produced to now a spot where there is no interaction whatsoever with a defendant and the child. And there's nothing that a defendant does to essentially move the child in a certain direction or to cause the child to do anything. What we had here was the young woman was doing as she always did, showering, using the toilet. Nothing that Mr. Hutton did had any influence on that conduct. He didn't direct her to use that bathroom. He didn't instruct her to use it at certain times or forbid her from using another bathroom. His conduct was entirely passive in the sense of the statute. So the statute wouldn't be used for this conduct. I think you'd suggested it should have been brought under a voyeurism statute. I thought that came up in some context. It was talked about how if Congress meant for this to encompass essentially voyeurism, Congress could have had that statute. And it may be that this is just simply not a federal charge. That it has to be at the state level. It very well could be a state level thing. And that's one of the things that Dubin emphasizes is this getting back to restraint in the breadth of criminal statutes. Not everything is a federal problem. And Congress has the ability to get at what are some legitimate societal issues. We see with the 1801 charge, which is different because it's a special territorial and maritime jurisdiction basis. But Congress knows how to write in photographing or creating depictions of private areas, which is essentially what happened in this case. So there is a certain point where we always have to be mindful of not expanding a statute beyond its terms or beyond its fair meaning just because we're concerned about someone's conduct. That's one of the things that the Supreme Court repeatedly emphasized in addition to the significance of the penalty. That is something that Dubin brought forth as well is Justice Sotomayor was repeatedly concerned about the mandatory minimum in that case. And how such a, quote, harsh penalty would have to be taken into account when we're differentiating conduct. And so Dubin really got at the significance of the statutory penalty as a factor in statutory interpretation. Something that Larson never really broached or that any case since Larson has broached. We pointed the court to the Seventh Circuit in Howard where the Seventh Circuit engaged in the kind of canon analysis that we believe is necessary post-Dubin. And it was a pre-Dubin decision. But the Seventh Circuit noted five of the six verbs on the statutory list require some action by the offender to cause the minor's direct engagement in sexually explicit conduct. That's the kind of analysis that we need to be having with statutes as broad as 2251. It's the kind of analysis that post-Dubin this court has adopted in Oracle in civil context where the court reminded us that, quote, so when several items in a list share an attribute, it favors interpreting the other items as possessing that attribute as well. So this court has continued to see Dubin as requiring a more intense focus on statutory interpretation than Larson and its progeny. And I see that I'm out of time. Thank you. We'll go ahead and give you two minutes for rebuttal. Thank you, Your Honor. Good morning again, Your Honors. Ian Garrix for the United States from the Eastern District of Washington. As discussed with my colleague here, this appeal focuses largely on Dubin, and as the court has already expressed its sentiment that Dubin doesn't really change the analysis. And in anything, if looking closely at Dubin compared to Larson and then Mendez in this court and Bohm, Dubin actually furthered the fact that a defendant can use a child for purposes of 2251A. In Dubin, for example, the Supreme Court actually went one step further than this court and Larson, in that Justice Sotomayor, the first piece she looked at was what is the title of the statute. In the Ninth Circuit and Larson, the court did not look at the title of the statute. If there's some ambiguity, you can look at the title of the statute. And 2251A is sexual exploitation of minors, and that helps create the context that there is actually a crime. This has not really been part of the discussion in our prior cases quite the way it strikes me looking at the statutory text. But 2251A criminalizes using a minor to engage in sexually explicit conduct. And I'm not really sure why simply doing what anyone does in the bathroom, taking a shower or using the toilet or whatever, is sexually explicit conduct that is causing using the person to engage in that. That just strikes me as peculiar, and I know that our cases say that it's good enough, but it strikes me as a very strange sort of interpretation of engaging in sexually explicit conduct. Is the court, Judge Graber, are you concerned about the word use or the actual term sexually explicit? No, causing, well, enticing or using the minor to engage in sexually explicit conduct. It's taking a shower, engaging in sexually explicit conduct. That's what I'm getting at. It's not the use part of it or the, you know, enticement part of it. And that's part of the definition. It doesn't have to be part of that definitional statute includes items that would be obvious, masturbation, sexual intercourse, but there's also the words, the lascivious display of the genitals, pubic area. That also, I mean, I guess that's where I think the criticisms that have been leveled in the past have some purchase in my mind, which is that it really, it can't entirely be in the eye of the beholder, it seems to me. That is what our law says, but that strikes me as very peculiar because depending on the culture that you come from, it may be that looking at a woman's toes in sandals is wildly lascivious to the viewer, but it isn't what we normally have in mind. And, well, these criticisms have been leveled perhaps for almost 40 years since DOST and this court's adoption of that in 1987 in Wiegand, and the courts have resoundingly and other circuits have actually adopted the DOST factors, not just this circuit, and although pedophiles like Mr. Hutton have leveled these claims for 40 years, this court has consistently rejected them, and it's not just from the eye of the beholder. And the reason why Defendant's Rule 29 motion here goes nowhere is because the district court actually found on five of the objective factors, because the DOST, in defining what these lascivious images are, the first five factors are objective. The sixth one is what the display did it intend to arouse, the sexual desire of the viewer, the defendant, or like-minded pedophiles. And here the district court actually hit all five of the DOST, the first five DOST factors, finding the focal, and the court has seen these images as supplied by the government, the district court saw them, whether or not, and you have a minor, the district court found that a bathroom can be of sexual, and being on the toilet can be of a sexual nature, that's a specific finding of the district court. The district court found factor number one, the focal point of the visual depiction is on the child's genitalia or pubic area. Here you have images right up close of the female's pubic area when she comes up close to the hidden camera, that's factor one. The scene can be associated with sexual activity, the district court found, based on the DOST factor, which has not been overruled, that a bathroom, or like a bedroom, can be that type of setting. Whether or not there's an unnatural pose, the district court found that as well, in instances where the minor had kind of stretched out her chest area. Whether or not the child is fully or partially clothed or nude, here obviously she's nude many times, district court found that. Five, whether or not there's a coyness involved, and the district court found that as well. None of those are objective factors, and those were found by the district court. This court can affirm just on those factors alone, and not even get into this challenge of whether or not the sixth factor applies. Defendant Hutton is trying to say that the sixth factor, whether or not it arouses the sexual interest of the defendant, or like-minded pedophiles, subsumes all of those five factors, but that is not the case. But the sixth factor, which this court and other courts have repeatedly affirmed, in Wiegand and Bohm and Mendez and Larson, is that subjective interest of the pedophile, and was that scene created to arouse him? And as the district court found here, there could not be a clearer record of factual findings than what the district court made here on the record after this bench trial. It is bulletproof, so to speak. Well, but these seem to be legal arguments that are being raised by the defendant. They are. I don't disagree with you, but I think that might be why the defendant has sort of walked away from some of the factual issues. Well, I guess Lascivious, your point is Lascivious, he does raise some factual. I mean, his are pure legal issues, as I understand them, is whether this is covered by use, which doesn't depend on the factual findings. Yes, but he also challenges the void for vagueness as to whether or not a reasonable adult would think that secretly placing a camera in the bathroom with your teenage daughter, having a prior conviction for communicating illicitly with minors, knowing that she's in there, and he limits the captured images just to when she's nude, no reasonable person would think that's child pornography or sexual, and that's just a preposterous argument. So he's trying to say that there's a void for vagueness challenge, that would be the legal allege, but he's not challenging the facts under the law. Therefore, I mean, factually and based on clear error, this court has to affirm. I don't hear him to be suggesting that the facts here aren't bad. I mean, I think everybody agrees they're bad. We're trying to address some legal technicalities on the definition of use, Lasciviousness. I mean, even overbreadth is really ultimately a legal question. There are two legal issues of the void for vagueness as to Lasciviousness, whether or not a reasonable person would know that this type of situation is the Lascivious display. And he cites Williams, a Supreme Court case from 2007, and it was basically a side note and Justice Scalia's opinion about that situation. And for 17 years, no court has found void for vagueness based on Williams, and it's been cited repeatedly. And therefore, there is no argument that a reasonable person would not think this is a sexual exploitation of a minder is preposterous in the government's view, and it has never gone anywhere in 17 years. That's his third argument. He might have put it there for a reason. Right. And the first argument goes to the use and the employing, and back to what Dubin – Dubin doesn't change the analysis at all. Dubin dealt with – you had an aggravated – 1028A, Aggravated Identity Theft Statute. The crux in Dubin, the Supreme Court analyzed the meaning of the word use, and it found, just like in Larson and Mendez and Bohm, that the word use – its plain language definition includes employ and avail oneself of. And that's exactly what Larson said, employ or avail oneself of. In addition, the court looked to the term nociter asociis, the associated words. It's known by its association. And you look at those words in conjunction with the other words in the statute. And then, finally, you have to look at the surplusage. If there are words that aren't in there, were they really intended to be in there? And then where Dubin actually pushes it against the defense's point is, unlike Larson, which didn't focus on the title of the statute, now the Supreme Court's telling us, which is obvious, look at the title of the statute, Sexual Exploitation of Minors. And, therefore, you can – so Dubin dealt with aggravated identity theft, yet the government, in that case, Supreme Court, found, well, they're really just overbilling. The crux of the crime was not when a medical provider used his employee's name and Medicare number to overbill based on that person's work because he really wasn't qualified for the work that he was billing for. The identity wasn't really the issue. The crux of the crime was the fraud. And then aggravated identity theft, you have a number of different ways that crime can be committed. It's not aggravated identity theft as to Medicare fraud. There's aggravated identity theft and a number of predicate means. Here we have 2251A, Sexual Exploitation of Minors, and using a minor for the purpose of creating a sexually explicit conduct. And in this term, the court, the government, would point to the 11th Circuit's recent decision in Dawson, which explains the noceter asociis analysis a little bit better. And what Judge Graber was getting at in Larson is that Larson was saying this is active conduct. The use connotes active conduct. In Dawson, unlike the defense is trying to say here it's purely passive, in Dawson, the 11th Circuit says they're all active. They're just different levels of active. And in that definition, you have the defendant employs, uses, induces, entices, persuades, or coerces this minor to engage in the sexually explicit conduct. And it divided, it put employ and use together as active, yet not as active as inducing, enticing, and persuading. That's a step above a more action. And then finally, coercing. So in Dawson, the court says there's a spectrum of activity that Congress intended to penalize or criminalize in terms of this word use and that it fits in that statute that a defendant uses. And in fact, here, when you look at under Dubin, the crux of the crime, because ultimately Justice Sotomayor and the court looked at the plain meeting, the words in conjunction with others, but really what is the crux of the crime. And in Dubin, it was unrelated to aggravated identity theft, this Medicare overbilling. Here, you don't have the crime of sexual exploitation of minors unless the minor is used. There is the minor. And that is what makes the crime. And the minor is engaged in sexually explicit conduct, which is defined under the Dost-Wiegand factors, which this court has resoundingly affirmed in Boehm and in Mendez. Where in similar situations, in Mendez, you didn't have action, or you didn't have a defendant directing the girl to be in the bedroom. He just put a secret hidden camera in there, and she just did the conduct. It happened to be masturbation, so no question about lasciviousness. And then in Boehm, one step further, the facts are identical. The only distinction between Boehm and here is that the defendant in Boehm directed her to a particular bedroom of the house. If lascivious could define – I mean, lascivious says it's the exhibition of particular parts of the body of any person. If it did include – I mean, could Congress define that however they wanted? And if it did include feet, as the hypothetical was there, would we have a different – I mean, at some point, wouldn't we have to step in and say, wait, this has gone too far? Well, there is a point in Dubin where I think the court points out it's not up to the – ultimately, it's not the government that's going to decide what to charge. The court has to set the rails of what's in the definable statute. But that's not the issue. I understand it's not an issue here, but I'm actually kind of saying that as support, that it says anus, genitals, or pubic area. That's what we're dealing with. I mean, if it were toes and somebody liked toes, that regardless of his – the perpetrator's interest, that wouldn't be covered by the statute, right? Right. Because it wouldn't fall within the definition of lasciviousness. Correct. And here it specifically falls in the definition of the sexually explicit conduct. I see that I'm out of time. Unless the court has further questions, the government would submit on its brief. Thank you, counsel. Thank you, Your Honors. Just very briefly, Your Honor, the point of the statutory title really hits at what we're getting at with Dubin. If the Supreme Court thought that the title of 1028A resolved the issue, it would have stopped there. But it didn't. It went through a series of components of analysis, starting with the title, which sometimes is not as clear as we might like. And then we go to the next step, including the statutory text, which the government doesn't talk much about. And if the text is not totally clear, then we go into the canons of construction. And that's where Dubin tells us to go that Larson didn't go, is that there is a methodology, not simply picking a couple tools that seem to support a broad interpretation. Dubin tells us step back, don't assume the conclusion first, go through the methodology. And when we do, that reset points us towards requiring, as the Mendez court said, a causal element. That's all I have, unless there are any questions. Thank you very much. Thank you, Your Honor. Thanks to both of you for your briefing and argument. In this case, this matter is submitted.
judges: GRABER, OWENS, NELSON